

**U.S. Department of Justice**

Antitrust Division

FILED
April 20 2009
Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

*Office of the Acting Assistant Attorney General*

950 Pennsylvania Ave., NW, Suite 3218
Washington, D.C. 20530-0001

April 17, 2009

*via overnight mail*

Montana Supreme Court
Clerk's Office
Room 323, Justice Building
215 N. Sanders
Helena, Montana 59620-3003

FILED
APR 2 0 2009
*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Re:   Comments on Proposed Revisions to the Rules on the Unauthorized Practice of Law

Dear Honorable Justices:

The Justice Department is pleased to provide comments to the Supreme Court of Montana on the proposal by the Commission on the Unauthorized Practice of Law ("Commission") to revise the rules on the unauthorized practice of law. The proposal would, among other things, add various "indicia" of the practice of law to the existing definition of the unauthorized practice of law. If adopted, the revised definition could bar non-lawyers from competing with lawyers for a range of services and could unnecessarily increase the prices paid by Montanans for those services.[1]

Consumers generally benefit from competition between lawyers and non-lawyers. Accordingly, the Justice Department believes that the definition of the unauthorized practice of law should be limited to activities for which specialized legal knowledge and training is demonstrably necessary to protect consumers and an attorney-client relationship is present. We are concerned that the Commission's proposal, by identifying broad categories of activities that may constitute the practice of law, such as "giving of advice or counsel to others as to their legal rights or responsibilities or responsibility of others," "[s]electing, drafting and completing legal papers, pleadings, agreements and other documents which affect the legal rights or responsibilities of others," and "[n]egotiating the legal rights or responsibilities of others," will unduly restrict non-lawyers from competing with lawyers.[2]

We recognize that, in *Montana Supreme Court Commission on the Unauthorized Practice of Law v. O'Neil*, this Court reviewed the indicia proposed here by the Commission and

---

[1] This letter focuses on the effects of the Commission's proposal on consumer welfare, and does not address whether the revised definition and potential competitive restraints arising from enforcement under it would be immunized from the federal antitrust laws under the state action doctrine.

[2] Revised Rule 2(h).

found them to be precise and readily understood.[3] However, the indicia could be interpreted to suggest that participation in a wide range of activities constitutes the unauthorized practice of law. If adopted, the proposed definition could force Montanans to hire a lawyer to provide a host of services where legal expertise should not be necessary, such as:[4]

- real estate agents explaining to consumers such things as the (i) ramifications of failing to have the home inspection done on time, (ii) meaning of a mortgage contingency clause, (iii) meaning of an easement, (iv) possible need to lower the price of a home because of an unusually restrictive easement, or (v) requirements for lead, smoke detector, and other inspections imposed by state law;

- tenants' associations informing renters of landlords' and tenants' legal rights and responsibilities, often in the context of resolving a particular landlord-tenant dispute;

- abstractors or title insurance agents, licensed by the State, issuing real estate title opinions and title reports;

- income tax preparers interpreting federal and state tax codes on behalf of their clients;

- financial institutions, investment bankers, securities brokers and other business planners or advisors providing advice to their clients that includes information about various laws;

- lay organizations, advocates, and consumer associations that provide citizens with information about legal rights and issues and help them negotiate solutions to problems; and

- human resources management and other specialists advising employers about employment discrimination and sexual harassment issues, as well as federal, state and local labor, immigration, zoning, safety and other regulatory compliance issues.

---

[3] 147 P.3d 200, 215 (Mont. 2006). This Court found that indicia of the practice of law identified by the District Court were "precise, comprehensible to a reasonable person and sufficient to prevent a person of common intelligence from having to guess at their meaning." *Id.* Here, the Commission proposes that those same indicia be added to the definition of the unauthorized practice of law.

[4] Non-lawyer providers of many services in Montana, including real estate brokers, are licensed and regulated under Title 37 of the Montana Code. *See* Mont. Code Ann. § 37 (2007). Depending on how the relevant provisions of the Code are construed, non-lawyers may be permitted to provide some of the services listed here even if the Court adopts the proposed definition of the unauthorized practice of law.

After providing background information and further explanation of our concerns, we suggest that the definition of the unauthorized practice of law be limited to situations where specialized legal skills are required and an attorney-client relationship is present.

### The Interest and Experience of the U.S. Department of Justice and the Federal Trade Commission

The Justice Department is entrusted with enforcing the federal antitrust laws. We work to promote free and unfettered competition in all sectors of the American economy. The United States Supreme Court has observed that "ultimately competition will produce not only lower prices, but also better goods and services. 'The heart of our national economic policy long has been faith in the value of competition.'"[5] Like all consumers, consumers of professional services benefit from competition,[6] and if competition to provide such services is restrained, consumers may be forced to pay higher prices or accept services of lower quality.

The Justice Department is concerned about efforts across the country to prevent non-lawyers from competing with lawyers through the adoption of excessively broad unauthorized practice of law restrictions by state courts and legislatures. Some of these proposals appear to be little more than overt attempts by lawyers to eliminate competition from alternative, lower-cost non-lawyer service providers; others, while appearing to be good faith efforts to protect consumers, have not been tailored narrowly enough to avoid unnecessary harm to competition. In addressing these concerns, the Justice Department encourages competition through advocacy letters and *amicus curiae* briefs filed with state supreme courts. Through these letters and filings, the Justice Department has urged states, the American Bar Association, and state bar associations to reject or narrow proposed restrictions on competition between lawyers and non-lawyers.[7] In

---

[5] *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 695 (1978) (quoting *Standard Oil Co. v. FTC*, 340 U.S. 231, 248 (1951)); *accord FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 423 (1990).

[6] *See, e.g., Prof'l Eng'rs*, 435 U.S. at 689; *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 787 (1975); *see also United States v. Am. Bar Ass'n*, 934 F. Supp. 435 (D.D.C. 1996), *modified*, 135 F. Supp. 2d 28 (D.D.C. 2001).

[7] *See* letters from the Justice Department to the Wisconsin Supreme Court (Oct. 10, 2008, Feb. 28, 2008 and Dec. 10, 2007); letter from the Justice Department and the FTC to the Supreme Court of Hawai'i (Jan. 25, 2008); letters from the Justice Department and the FTC to the Committee on the Judiciary of the New York State Assembly (Apr. 27, 2007 and June 21, 2006); letter from the Justice Department and the FTC to the Executive Director of the Kansas Bar Ass'n (Feb. 4, 2005); letter from the Justice Department and the FTC to the Task Force to Define the Practice of Law in Massachusetts, Massachusetts Bar Ass'n (Dec. 16, 2004); letter from the Justice Department and the FTC to Unauthorized Practice of Law Committee, Indiana State Bar Ass'n (Oct. 1, 2003); letter from the Justice Department and the FTC to the Standing Committee on the Unlicensed Practice of Law, State Bar of Georgia (Mar. 20, 2003); letters from the Justice Department to Speaker of the Rhode Island House of Representatives and to the President of the Rhode Island Senate, *et al.* (June 30, 2003 and Mar. 28, 2003); letter from the Justice Department and the FTC to Task Force on the Model Definition of the Practice of Law, American Bar Ass'n (Dec. 20, 2002); letter from the Justice Department and the FTC to the Speaker of the Rhode Island House of Representatives, *et al.* (Mar. 29, 2002); letter from the Justice Department and the FTC to the President of the North Carolina State Bar (July 11, 2002); letter from the Justice Department and the FTC to the Ethics Committee of the North Carolina State Bar (Dec. 14, 2001); letter from the Justice Department to the Board of Governors of the Kentucky Bar Ass'n (June 10, 1999 and Sept. 10, 1997); letter from the Justice Department and the FTC to the Supreme Court of Virginia (Jan. 3, 1997); letter from the Justice Department and the FTC to the Virginia State Bar

addition, the Justice Department has obtained injunctions prohibiting bar associations from unreasonably restraining competition by non-lawyers in violation of the antitrust laws.[8] Our comments on the Commission's proposal are part of our ongoing efforts in this area.

### Restrictions on Competition Should Be Closely Examined to Determine Whether They Are in the Public Interest

Restrictions on competition generally are harmful to consumers. Such restrictions are in the public interest only if they are needed to achieve some overriding benefit – such as preventing significant consumer harm from the provision of services by providers who lack the requisite knowledge and training – and are narrowly drawn to minimize their anticompetitive impact.[9] The Justice Department recognizes that there are some services that should be provided only by lawyers because they require legal knowledge and training. For example, only someone who understands law and litigation procedures should represent clients in open court in matters involving their legal rights. Such a requirement protects consumers as well as the court. But consumers also benefit when non-lawyers compete with lawyers to provide many other services that do not require legal training, knowledge or skills.[10] Allowing non-lawyers to provide such

---

(Sept. 20, 1996). Brief *Amicus Curiae* of the United States of America and the FTC in *Lorrie McMahon v. Advanced Title Servs. Co. of W. Va.*, No. 31706 (filed May 25, 2004), available at http://www.usdoj.gov/atr/cases/f203700/203790.htm; Brief *Amicus Curiae* of the United States of America and the FTC in On Review of ULP Advisory Opinion 2003-2 (filed July 28, 2003), available at http://www.usdoj.gov/atr/cases/f201100/201197.htm; Brief *Amicus Curiae* of the United States of America in Support of Movants Kentucky Land Title Ass'n *et al.* in *Ky. Land Title Ass'n v. Ky. Bar Ass'n*, No. 2000-SC-000207-KB (Ky., filed Feb. 29, 2000), available at http://www.usdoj.gov/atr/cases/f4400/4491.htm. The letters to the American Bar Ass'n, Wisconsin, Hawai'i, Indiana, New York, Rhode Island, Massachusetts, North Carolina, Georgia, Kansas, and Virginia may be found on the Justice Department's website, http://www.usdoj.gov/atr/public/comments/comments.htm.

[8] In *United States v. Allen County Bar Ass'n*, the Justice Department sued and obtained a judgment against a bar association that had restrained title insurance companies from competing in the business of certifying titles. The bar association had adopted a resolution requiring lawyers' examinations of title abstracts and had induced banks and others to require the lawyers' examinations of their real estate transactions. Civ. No. F-79-0042 (N.D. Ind. 1980). In *United States v. N.Y. County Lawyers Ass'n*, the Justice Department obtained a court order prohibiting a county bar association from restricting the trust and estate services that corporate fiduciaries could provide in competition with lawyers. No. 80 Civ. 6129 (S.D.N.Y. 1981). *See also United States v. County Bar Ass'n*, No. 80-112-S (M.D. Ala. 1980). In addition, the Justice Department has obtained injunctions against other anticompetitive restrictions in professional associations' ethical codes and against other anticompetitive activities by associations of lawyers. *See, e.g., United States v. Am. Bar Ass'n*, 934 F. Supp. 435; *Prof'l Eng'rs*, 435 U.S 679; *United States v. Am. Inst. of Architects*, 1990-2 Trade Cas. (CCH) ¶ 69,256 (D.D.C. 1990); *United States v. Soc'y of Authors' Reps.*, 1982-83 Trade Cas. (CCH) ¶ 65,210 (S.D.N.Y. 1982).

[9] *Cf. FTC v. Indiana Federation of Dentists*, 476 U.S. 447, 459 (1986) ("Absent some countervailing procompetitive virtue," an impediment to "the ordinary give and take of the marketplace cannot be sustained under the Rule of Reason.") (internal quotations and citations omitted).

[10] "Several jurisdictions recognize that many such [law-related] services can be provided by nonlawyers without significant risk of incompetent service, that actual experience in several states with extensive nonlawyer provision of traditional legal services indicates no significant risk of harm to consumers of such services, that persons in need of legal services may be significantly aided in obtaining assistance at a much lower price than would

-4-

services permits consumers to select from a broader range of options, considering for themselves such factors as cost, convenience, and the degree of assurance that the necessary documents and commitments are sufficient. As the United States Supreme Court stated:

> The assumption that competition is the best method of allocating resources in a free market recognizes that *all elements of a bargain - quality, service, safety, and durability* - and not just the immediate cost, are favorably affected by the free opportunity to select among alternative offers.[11]

Sound competition policy calls for any restriction on competition to be justified by a valid need, such as protecting the public from harm, and for the restriction to be narrowly drawn to minimize its anticompetitive impact.[12] The inquiry into the public interest involves not only an assessment of the harm that consumers may suffer from allowing non-lawyers to perform certain tasks, but also consideration of the benefits that accrue to consumers when lawyers and non-lawyers compete.[13]

The Justice Department is not aware of evidence of harm to Montana consumers arising from non-attorneys providing services such as those referenced above that do not require the skill or knowledge of a lawyer. In the absence of such evidence, we believe that the revisions to the definition of the unauthorized practice of law proposed by the Commission unnecessarily limits competition between lawyers and non-lawyers and likely will cause more harm to consumers than it will prevent.

Evidence suggests that lay people can and do competently perform many of the services that the proposed rule could limit to lawyers.[14] Academic research indicates that consumers likely face little risk of harm from non-lawyer competition in many areas. For example, studies of lay specialists who provide bankruptcy and administrative agency hearing representation find

---

be entailed by segregating out a portion of a transaction to be handled by a lawyer for a fee, and that many persons can ill afford, and most persons are at least inconvenienced by, the typically higher cost of lawyer services. In addition, traditional common-law and statutory consumer-protection measures offer significant protection to consumers of such nonlawyer services." Restatement (Third) of Law Governing Lawyers § 4 cmt. c (2000).

[11] *Prof'l Eng'rs*, 435 U.S. at 695 (emphasis added); *accord, Superior Court Trial Lawyers Ass'n*, 493 U.S. at 423.

[12] *Cf. FTC. v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986) ("Absent some countervailing procompetitive virtue," an impediment to "the ordinary give and take of the market place . . . cannot be sustained under the Rule of Reason.") (internal quotations and citations omitted).

[13] *See Prof'l Eng'rs*, 435 U.S. at 689; *Goldfarb v. Va. State Bar*, 421 U.S. 773, 787 (1975). *See also In re Opinion No. 26 of the Comm. on Unauthorized Practice of Law*, 654 A.2d 1344, 1345-46 (N.J. 1995) (lawyer/non-lawyer competition benefits the public interest).

[14] Significantly, a 1999 survey found that in most states complaints about the unauthorized practice of law did not come from consumers, the potential victims of such conduct, but from attorneys, who did not allege any claims of specific injury. Deborah Rhode, *Access to Justice: Connecting Principles to Practice*, 17 Geo. J. Legal Ethics 369, 407-08 (2004).

that they perform as well as or better than lawyers.[15] Similarly, a study comparing five states where lay providers examined title evidence, drafted real estate-related instruments, and facilitated the closing of real estate transactions with five states that prohibited lay provision of such services found, "The only clear conclusion . . . is that the evidence does not substantiate the claim that the public bears a sufficient risk from lay provision of real estate settlement services to warrant blanket prohibition of those services under the auspices of preventing the unauthorized practice of law."[16]

If non-lawyers were barred from providing the services encompassed by the proposed rule, fees for those services likely would rise. The potential harm from increasing the cost for these services may deter some consumers from seeking assistance of any kind. Consumers who otherwise would receive assistance from non-lawyer service providers – tenants' associations, lay organizations, and others – would be forced to choose between hiring a lawyer and going without assistance altogether. Similarly, a 1996 ABA task force survey concluded that low income and middle-income households were underserved by the legal system, with cost being a major reason why these groups avoided the legal system.[17]

Even Montanans who would choose a lawyer over a lay service provider likely will pay higher prices if the revised definition is adopted. Evidence gathered in a New Jersey Supreme Court proceeding indicated that, in communities in New Jersey where non-lawyers frequently competed with lawyers to close real estate transactions, buyers represented by counsel paid on average $350 less for closings, and sellers represented by counsel paid $400 less, than in the New Jersey communities where lay closings were not prevalent.[18] Likewise, the Kentucky Supreme Court concluded that prices for real estate closings by lawyers dropped substantially–by as much as one percent of the loan amount plus fees–as a result of competition from lay title companies, explaining that the lay competitors' presence "encourages attorneys to work more cost-

---

[15] Deborah Rhode, *Access to Justice: Connecting Principles to Practice*, 17 Geo. J. Legal Ethics 369, 407-08 (2004). *See also* Herbert M. Kritzer, *Legal Advocacy: Lawyers and Non Lawyers at Work* 50-51 (1998) (finding that in unemployment compensation appeals before the Wisconsin Labor and Industry Review Commission, "[t]he overall pattern does not show any clear differences between the success of lawyers and agents").

[16] Joyce Palomar, *The War Between Attorneys and Lay Conveyancers – Empirical Evidence Says "Cease Fire!"*, 31 CONN. L. REV. 423, 520 (1999).

[17] Am. Bar Ass'n Fund for Justice & Ed., Legal Needs & Civil Justice: *A Survey of Americans* (1996). The most common legal needs reported by respondents were related to personal finances, consumer issues, and housing. For low- and middle-income households, the most common response to a legal problem was "handling the situation on their own." For low-income households, the second most common response was to take no action at all. The second-most common response for middle-income households was to use the legal system, including contacts with lawyers, mediators, arbitrators, or official hearing bodies.

[18] *See In re Opinion No. 26 of the Comm. on Unauthorized Practice of Law*, 654 A.2d 1344, 1348-49 (N.J. 1995).

effectively."[19] And, in Virginia, where the legislature passed a law upholding the right of consumers to continue using lay closing services, proponents of lay competition presented survey evidence suggesting that lay closings in Virginia cost on average $150 less than lawyer closings.[20]

### Restrictions on Lawyer/Non-Lawyer Competition Should Be Limited to Services Provided Pursuant to an Attorney-Client Relationship

The revised definition appears to be overbroad because it could bar non-lawyers from providing services in many instances where it is apparent that specialized legal skills are not required and an attorney-client relationship does not exist. To preserve competition, and to benefit consumers, the Court should consider adopting language similar to that found in Rule 49 of the District of Columbia Court of Appeals. Although Rule 49 defines the practice of law, as opposed to the unauthorized practice of law, the reasoning behind it is informative for consideration of a definition of the unauthorized practice of law. Rule 49 defines the practice of law as "the provision of professional legal advice or services where there is a client relationship of trust or reliance."[21] The Commentary to Rule 49 makes clear that giving advice or counsel to others as to legal rights or responsibilities is not necessarily the practice of law. Rather, such services may be the practice of law if they are provided in the context of an attorney-client relationship. The Commentary explains:

> As originally stated in ... the prior Rule, the "practice of law" was broadly defined, embracing every activity in which a person provides services to another relating to legal rights. This approach has been refined, in recognition that there are some legitimate activities of non-Bar members that may fall within an unqualifiedly broad definition of the law. The definition set forth in section (b)(2) is designed to focus first on the two essential elements of the practice of law: The provision of legal advice or services, and a client relationship of trust or reliance. Where one provides such advice or services within such a relationship, there is an implicit representation that the provider is authorized or competent to provide them; just as one who provides any services requiring special skill gives an implied warranty that they are provided in a good and workmanlike manner. ... The presumption that one's engagement in [an activity] is the 'practice of law' may be rebutted by showing that there is no client relationship of trust or reliance, or that there is no explicit or implicit representation of authority or competence to practice law, or that both are absent. .. [T]he Rule is not intended to cover conduct which lacks the essential features of an attorney-client relationship. ... Tax accountants, real estate agents, title company attorneys, securities advisors, pension consultants, and the like, who do not indicate they are providing legal advice or services based on competence and

---

[19] See, e.g., Countrywide Home Loans, Inc. v. Ky. Bar Ass'n, 113 S.W.3d 105, 120 (Ky. 2003) ("before title companies emerged on the scene, [the Kentucky Bar Association's] members' rates for such services were significantly higher").

[20] See letters to the Virginia Supreme Court and Virginia State Bar, supra n.7.

[21] D.C. Court of Appeals Rule 49(b)(2) (2004) (outline letters omitted).

-7-

standing in the law are not engaged in the practice of law, because their relationship with the customer is not based on a reasonable expectation that learned and authorized professional legal advice is being given. Nor is it the practice of law under the Rule for a person to draft an agreement or resolve a controversy in a business context, where there is no reasonable expectation that she is acting as a qualified or authorized attorney....[22]

Adding the requirement of an attorney-client relationship and similar commentary to the proposed definition would protect Montana consumers from harm caused by persons engaged in the unauthorized practice of law, while also preserving lawyer/non-lawyer competition that benefits consumers.

## Conclusion

The choice of whether to use a lawyer or non-lawyer service provider should rest with the consumer unless it is clear that specialized legal skills or training are required. Lawyer/non-lawyer competition benefits consumers, particularly when there is no evidence that consumers have been harmed by non-lawyer service providers. We urge the Court to revise the proposed definition to preserve competition in service areas for which the knowledge and skill of a lawyer is not required.

The Justice Department thanks you for this opportunity to present our views. We would be pleased to address any questions or comments regarding this letter.

Yours Sincerely,

Scott D. Hammond
Acting Assistant Attorney General

---

[22] *Id.* Commentary on Rule 49(b)(2).

-8-